THE STATE OF OHIO, CROSS-APPELLANT, *v.* WILLAN, CROSS-APPELLEE.

[Cite as *State v. Willan,* 144 Ohio St.3d 94, 2015-Ohio-1475.]

(No. 2012–0216—Submitted January 13, 2015—Decided April 21, 2015.)

FRENCH, J.

{¶ 1} Today we reopen the case of cross-appellee, David Willan, to consider new developments in Sixth Amendment jurisprudence. We conclude that because Willan's case involved only judge-made findings of law, and not judge-made findings of fact, there was no violation of Willan's Sixth Amendment right to a jury. Consequently, this sequel ends much the same way as the original, with Willan unambiguously subject to the mandatory ten-year prison term found in R.C. 2929.14(D)(3)(a).[1]

## Background

{¶ 2} In December 2008, a jury convicted Willan of 68 counts, all stemming from Willan's business enterprises, Evergreen Homes, L.L.C., and Evergreen Investment Corporation. Only a handful of those counts are at issue here.

{¶ 3} First, the jury found Willan guilty of five counts of false representation in the registration of securities, a violation of R.C. 1707.44(B)(1). On the verdict forms, the jury indicated that each separate count involved at least $100,000 in securities. Former R.C. 1707.99(E) provided that any securities offense valued at $100,000 or more was a first-degree felony. Am.Sub.H.B. No. 695, 147 Ohio Laws, Part III, 5426.

{¶ 4} The jury also found Willan guilty of two separate theft offenses: aggravated theft and theft from the elderly, both violations of R.C. 2913.02(A)(3). The jury found that the amount of property involved in the aggravated-theft conviction amounted to more than $1 million. On the count of theft from the

---

1. R.C. 2929.14(D)(3)(a) has since been amended and is now codified at R.C. 2929.14(B)(3). 2011 Am.Sub.H.B. No. 86. All references to R.C. 2929.14(D)(3)(a) in this opinion are to the former version of the statute, which can be found at Am.Sub.H.B. No. 473, 150 Ohio Laws, Part IV, 5735.

elderly, the jury valued the amount of stolen property at $100,000 or more. These findings elevated both theft convictions to first-degree felonies. Former R.C. 2913.02(B)(2) and (3), Sub.H.B. No. 347, 151 Ohio Laws, Part IV, 8163.

{¶ 5} The last conviction we review here—and the one most central to this case—is Willan's conviction for engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), part of Ohio's Racketeer Influenced and Corrupt Organizations ("RICO") statute. A RICO conviction is dependent on a defendant's engaging in a "pattern of corrupt activity." R.C. 2923.32(A)(1). A "pattern" requires the commission of two or more of the predicate offenses (also referred to as "incidents of corrupt activity") listed in R.C. 2923.31(I). R.C. 2923.31(E). The predicate-offense list includes the three crimes mentioned above: false representation, aggravated theft, and theft from the elderly.

{¶ 6} The jury returned a guilty verdict on the RICO count but did not specify which of Willan's other offenses were the predicates for the RICO conviction. On the verdict form, the jury merely filled in a line indicating that "at least one of" the RICO predicates "was False Representation in the Registration of Securities, Aggravated Theft or Theft from the Elderly." [2]

{¶ 7} At the time, R.C. 2929.14(D)(3)(a) provided that "if the court imposing sentence upon an offender for a felony finds that the offender is guilty of corrupt activity with the most serious offense in the pattern of corrupt activity being a felony of the first degree, * * * the court shall impose upon the offender for the felony violation a ten-year prison term." Am.Sub.H.B. No. 473, 150 Ohio Laws, Part IV, 5735. Relying on this provision, the trial court sentenced Willan to a mandatory term of ten years on the RICO count, over Willan's objection.

{¶ 8} Willan appealed, with some success. The court of appeals declared R.C. 2929.14(D)(3)(a) ambiguous and vacated the mandatory ten-year prison term imposed for the RICO count. 9th Dist. Summit No. 24894, 2011-Ohio-6603, 2011 WL 6749842, ¶ 119. The court reversed the convictions for aggravated theft and theft from the elderly on the basis of insufficient evidence. *Id.* at ¶ 79. It also affirmed three of the five guilty verdicts for false representation and reversed two. *Id.* at ¶ 63 and 71.

{¶ 9} After reversing the theft counts (both of which could have served as RICO predicates), the court of appeals had to consider whether there was sufficient evidence left to support the RICO conviction. Ultimately, the court found that the evidence relating to the three remaining false-representation

---

2. Specifically, the jury was asked to fill in the blank in the following sentence with either "was" or "was not": "We further find that at least one of the incidents of corrupt activity _____ False Representation in the Registration of Securities, Aggravated Theft or Theft from the Elderly." The jury wrote "was" in the blank.

convictions was legally sufficient to establish a pattern of corrupt activity and uphold the RICO conviction. *Id.* at ¶ 85.

{¶ 10} When Willan's case first arrived in this court, we considered Willan's convictions as they stood after the court of appeals' ruling: one first-degree-felony RICO conviction, predicated on three first-degree-felony convictions for false representation. 136 Ohio St.3d 222, 2013-Ohio-2405, 994 N.E.2d 400, ¶ 3. Our only task at that time was to review the application of the mandatory ten-year sentence under R.C. 2929.14(D)(3)(a). We reversed the court of appeals in part, determining that R.C. 2929.14(D)(3)(a) unambiguously applied to Willan. *Id.* at ¶ 11. We held that because Willan was found " 'guilty of corrupt activity with the most serious offense in the pattern of corrupt activity [false representation] being a felony of the first degree,' " Willan "fell squarely within the scope" of R.C. 2929.14(D)(3)(a). *Id.* at ¶ 11, quoting R.C. 2929.14(D)(3)(a).

{¶ 11} Six days later, the United States Supreme Court decided *Alleyne v. United States,* 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), a case concerning mandatory minimum sentences and the Sixth Amendment. Willan promptly filed a motion for reconsideration in this court, based in part on *Alleyne.* We denied his motion. *State v. Willan,* 136 Ohio St.3d 1477, 2013-Ohio-3790, 993 N.E.2d 780. Willan then filed a petition for certiorari in the United States Supreme Court, arguing that *Alleyne* prohibited imposition of the mandatory ten-year prison term under R.C. 2929.14(D)(3)(a).

{¶ 12} On April 24, 2014, the United States Supreme Court granted Willan's certiorari petition, vacated this court's decision in *Willan,* and remanded the case "for further consideration in light of *Alleyne v. United States,* 570 U.S. —— [133 S.Ct. 2151, 186 L.Ed.2d 314] (2013)." —— U.S. ——, 134 S.Ct. 1873, 188 L.Ed.2d 905 (2014).[3] Upon remand, we ordered the parties to brief the issue of *Alleyne*'s impact on our holding in *Willan.* 140 Ohio St.3d 1436, 2014-Ohio-4160, 16 N.E.3d 680. The parties provided their responses, and now we provide ours.

## Analysis

{¶ 13} The Sixth Amendment, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the United States Supreme Court explained that the

---

3. This type of summary disposition, typically referred to as a "GVR" (grant, vacate, and remand) is not a ruling on the merits, but rather a vehicle for lower courts to "consider potentially relevant decisions and arguments that were not previously before it." *Stutson v. United States,* 516 U.S. 193, 197, 116 S.Ct. 600, 133 L.Ed.2d 571 (1996). "[A] GVR does not indicate, nor even suggest, that the lower court's decision was erroneous." *Communities for Equity v. Michigan High School Athletic Assn.,* 459 F.3d 676, 680 (6th Cir.2006).

elements of a crime include not just those facts establishing guilt, but also those "facts that expose a defendant to a punishment greater than that otherwise legally prescribed." *Id.* at 483, fn. 10. So, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

{¶ 14} *Alleyne,* the case Willan argues to us now, is an extension of the *Apprendi* rule. What *Apprendi* did for statutory maximums, *Alleyne* does for mandatory minimums. Its premise is simple: "judicial factfinding that increases the mandatory minimum sentence for a crime" violates the Sixth Amendment. *Alleyne,* 133 S.Ct. at 2155, 186 L.Ed.2d 314. Its practical upshot is simpler still: "facts that increase mandatory minimum sentences must be submitted to the jury." *Id.* at 2163. A judge cannot impose a sentence that relies on facts not reflected in the jury's verdict. *Apprendi* at 483; *Blakely v. Washington,* 542 U.S. 296, 304, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

{¶ 15} But judges still have a seat at the sentencing table. The *Apprendi/Alleyne* line of cases prohibits judges only from finding "facts" that increase punishment, not from making legal determinations that increase punishment. *Alleyne* at 2155; *James v. United States,* 550 U.S. 192, 214, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (sentencing determination did not implicate *Apprendi,* because it required "statutory interpretation, not judicial factfinding"); *United States v. Gabrion,* 719 F.3d 511, 532 (6th Cir.2013) ("*Apprendi* does not apply to every 'determination' that increases a defendant's maximum sentence"). *Apprendi,* for example, admonished a trial judge who, after holding a separate, posttrial evidentiary hearing, made a factual determination as to the purpose behind the defendant's crime. *Apprendi* at 470. In *Alleyne,* the Supreme Court struck down the defendant's sentence because the trial judge imposed a higher sentence after he (not the jury) personally found that the defendant had brandished a firearm during commission of his underlying offense. *Alleyne* at 2163–2164.

{¶ 16} Willan's conviction survives Sixth Amendment scrutiny because it depends on no such judicial fact-finding. The only judicial findings present in his case were legal ones.

{¶ 17} Under R.C. 2929.14(D)(3)(a), the ten-year mandatory sentence applied to an offender who was "guilty of corrupt activity with the most serious offense in the pattern of corrupt activity being a felony of the first degree." In this case, we know that Willan was found guilty of engaging in a pattern of corrupt activity (the RICO charge) and was found guilty of three counts of false representation. Accordingly, imposition of the mandatory sentence requires three things: (1) the offense of false representation qualifies as "corrupt activity," (2) Willan's false-

representation convictions were for first-degree felonies, and (3) Willan's false-representation convictions—as opposed to, say, some of his other convictions—actually were the predicate offenses forming the RICO "pattern of corrupt activity." R.C. 2929.14(D)(3)(a). We agree with Willan that the jury forms do not expressly state any of these conclusions. But we do not agree that this amounts to an *Alleyne* violation, because none of the necessary findings were findings of fact. They were findings of law.

{¶ 18} To begin, the trial judge did not have to make any factual findings to determine that the crime of false representation qualifies as "corrupt activity." "Corrupt activity" is defined by statute and includes violations of R.C. 1707.44(B), the false-representation statute. R.C. 2923.31(I)(2)(a) (" 'Corrupt activity' means engaging in * * * [c]onduct constituting * * * [a] violation of * * * division (B) * * * of section 1707.44"). There was no fact-finding required here; rather, all the trial judge had to do was apply R.C. 2923.31(I)(2)(a) as written. Statutory application does not violate the Sixth Amendment, even if it increases a defendant's ultimate sentence. *James*, 550 U.S. at 213–214, 127 S.Ct. 1586, 167 L.Ed.2d 532; *Gabrion*, 719 F.3d at 532.

{¶ 19} *James* is dispositive on this point. *James* involved a defendant who was convicted under the Armed Career Criminal Act, 18 U.S.C. 924(e)(1), of possession of a firearm by a convicted felon. The crime carried a mandatory 15–year sentence for offenders with three prior convictions "for a violent felony or a serious drug offense." *James* at 195. James had three prior convictions, one of which was an attempted burglary in Florida.

{¶ 20} James argued that the mandatory minimum did not apply, because attempted burglary was not a violent felony. The Supreme Court disagreed. It analyzed the statutory definition of "violent felony" [4] and determined that aggravated burglary qualified, thereby subjecting James to the 15–year mandatory minimum.

{¶ 21} James had tried to preempt the court's analysis by raising the same argument that Willan raises here. He "argue[d] that construing attempted burglary as a violent felony raises Sixth Amendment issues under *Apprendi* * * * and its progeny because it is based on 'judicial fact finding.' " *James* at 213. The court roundly rejected James's objections, explaining: "In determining whether attempted burglary under Florida law qualifies as a violent felony under § 924(e)(2)(B)(ii), the Court is engaging in statutory interpretation, not judicial factfinding." *Id.* at 214.

---

4. Specifically, the court had to analyze whether aggravated burglary, as it exists in Florida, "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. 924(e)(2)(B)(ii).

{¶ 22} The same is true here. Determining that false representation qualifies as "corrupt activity" requires only statutory application, not judicial fact-finding. This no more runs afoul of *Alleyne* than did the Supreme Court's decision in *James* —which is to say, not at all. Indeed, this case is even more straightforward than *James*. While *James* involved an open-ended, subject-to-interpretation definition of "violent felony," the statute at issue in this case explicitly identifies Willan's exact crimes as corrupt activity, with no interpretation necessary. Both James's case and Willan's case are examples of legal findings; the findings in both are permissible under *Alleyne*.

{¶ 23} The same can be said for the trial court's finding that the counts of false representation were first-degree felonies. This conclusion was the result of jury-found facts and statutory application. There was no judicial fact-finding. Former R.C. 1707.99(E) provided that if the value of the funds involved in an R.C. 1707.44 offense was $100,000 or more, the offense was a first-degree felony. Am.Sub.H.B. No. 695, 147 Ohio Laws, Part III, 5425, 5426. Here, the jury found, and indicated on verdict forms, that the value of each false-representation count was more than $100,000. The only thing left for the trial court to do was apply R.C. 1707.99(E) as written. The court's designation of the false-representation convictions as first-degree felonies was therefore a legal finding, based on "the jury's verdict alone." *Blakely*, 542 U.S. at 304, 124 S.Ct. 2531, 159 L.Ed.2d 403; *see also State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 81, *abrogated on other grounds, Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) (court could find that defendant was a "major drug offender" because finding was based only on statute and jury verdict regarding amount of drugs defendant possessed). Therefore, the first-degree-felony finding does not violate *Alleyne*.

{¶ 24} The final requirement for imposition of the mandatory sentence presents a more complex question. Yes, a judge can determine that each count of false representation qualifies as a first-degree felony and as "corrupt activity"— but can a judge, without violating the Sixth Amendment, also determine that multiple false-representation convictions, taken together, formed a "pattern of corrupt activity"? In other words, could a judge identify Willan's RICO predicates without running afoul of *Alleyne*?

{¶ 25} In this case, at least, the answer is yes. And the rationale is the same as before: here, the identification of the RICO predicates was a matter of law, not a finding of fact. The jury's verdict form provided three possible predicates for the RICO offense: false representation, aggravated theft, and theft from the elderly. The court of appeals later reversed both theft counts, leaving just three of the false-representation convictions intact. 2011-Ohio-6603, 2011 WL 6749842, ¶ 71, 79.

{¶ 26} Having reversed some of the possible predicate offenses, the court of appeals then had to determine whether the RICO conviction could still stand. *Id.* at ¶ 82–85. The question before the court was one of sufficiency of the evidence: whether the remaining counts of false representation were enough to establish a "pattern of corrupt activity" and therefore to uphold the RICO conviction. After conducting a standard sufficiency analysis, the court of appeals concluded that the three incidents of false representation were indeed sufficient predicates for the RICO conviction. *Id.* at ¶ 85.

{¶ 27} The judicial identification of the RICO predicates does not offend *Alleyne.* Sufficiency analyses are not fact-finding adventures. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The court's finding that the remaining false-representation counts supported the RICO charge as predicate offenses does not violate *Alleyne,* as the judicial finding does not impinge on the jury's function. "[C]ourts can and regularly do gauge the sufficiency of the evidence without intruding into any legitimate domain of the trier of fact." *Jackson v. Virginia,* 443 U.S. 307, 321, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 28} But even if we were to construe the judicial identification of the RICO predicates as an *Apprendi/Alleyne* error, it would be a harmless one. *See Washington v. Recuenco,* 548 U.S. 212, 215, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (*Apprendi* errors are reviewed for harmless error). "An *Apprendi* error is harmless where the evidence overwhelmingly establishes the [facts] needed to justify the [sentence]." *United States v. Soto–Beniquez,* 356 F.3d 1, 46 (1st Cir.2003). Here, the facts are simple, and the evidence is overwhelming.

{¶ 29} Willan's false-representation convictions stemmed from three attempts to sell security interests in his company, Evergreen Homes, L.L.C. By law, these securities sales had to be either registered with the state or subject to an exemption. Willan filed for exemptions. On November 24, 2004, he filed an exemption form (titled "Form D") with the Ohio Department of Commerce, Division of Securities, for a $1.5 million issuance of securities. On April 29, 2005, Willan filed another Form D for a subsequent $2 million issuance of securities. Finally, on July 25, 2005, he filed a third Form D, this time for a $500,000 issuance of securities. On each form, Willan indicated that Evergreen Homes, L.L.C., would not pay any commissions in connection with the sales of securities. These statements were false. In reality, Willan's securities salesman worked on commission. As a result, each Form D represented a separate incident of false representation in the registration of securities.

{¶ 30} In order for these convictions to form the "pattern of corrupt activity" necessary for a RICO conviction, there would have to be (1) "two or more

incidents" of false representation (2) that were "related to the affairs of the same enterprise," (3) that were "not isolated," and (4) that were "not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). The record overwhelmingly supports each of these prongs.

{¶ 31} The first two prongs are indisputable. Willan was convicted of more than two (indeed, three) incidents of false representation. And as clearly stated on each Form D, the false representations were all made for the same enterprise: Evergreen Homes, L.L.C., the issuer of the securities.

{¶ 32} It is also overwhelmingly obvious that the instances of misrepresentation were not isolated. None of the false statements were remote; all were part of a continuous pattern of offerings that occurred over the span of some eight months.

{¶ 33} Nor were the incidents "a single event." On three clearly delineated occasions, Willan falsely represented his business to the state in order to exempt his securities sales from registration. The first incident occurred on November 24, 2004. It involved one discrete filing, connected to a particular issuance of securities. The second incident occurred months later and was the result of a new filing, on a new form, for a new issuance of securities. The final incident occurred in July 25, 2005, and was again a separate certification, made in connection with a separate issuance of securities. These were not one event.

{¶ 34} The evidence establishes that the incidents of false representation formed a pattern of corrupt activity and served as underlying predicates to the RICO conviction. Given this clear-cut evidence, we conclude beyond a reasonable doubt that if the jury had been asked directly, it would have listed the false-representation counts as RICO predicates. Therefore, even if the jury's failure to identify the predicates was an *Apprendi/Alleyne* error, the error was harmless. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (federal constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").

## Conclusion

{¶ 35} Imposition of R.C. 2929.14(D)(3)(a)'s mandatory sentence does not offend Willan's constitutional rights under *Alleyne*. In this case, imposition of the mandatory sentence occurred without any judicial fact-finding. To the contrary, all of the pertinent findings involved matters of law.

{¶ 36} Having found no constitutional error after consideration of *Alleyne*, we reinstate our prior judgment and once again reverse the court of appeals. *See* 136 Ohio St.3d 222, 2013-Ohio-2405, 994 N.E.2d 400. R.C. 2929.14(D)(3)(a)

unambiguously applies to Willan and subjects him to a mandatory RICO sentence of ten years.

Judgment reversed.

HALL, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

PFEIFER, Acting C.J., and LANZINGER, J., dissent.

MICHAEL T. HALL, J., of the Second Appellate District, sitting for O'CONNOR, C.J.

---

LANZINGER, J., dissenting.

{¶ 37} The mandate of the United States Supreme Court vacated this court's earlier decision in this case and remanded the case "for further consideration in light of *Alleyne v. United States,* 570 U.S. —— [133 S.Ct. 2151, 186 L.Ed.2d 314] (2013)." *Willan v. Ohio,* —— U.S. ——, 134 S.Ct. 1873, 188 L.Ed.2d 905 (2014). Because I do not believe that the majority has grasped the import of *Alleyne,* I respectfully dissent. I would reverse Willan's conviction under R.C. 2923.32(A)(1), part of Ohio's Racketeer Influenced and Corrupt Organizations ("RICO") statute, and the ten-year sentence imposed for that offense.

{¶ 38} The portion of the judgment of the Ninth District Court of Appeals that reversed Willan's mandatory ten-year prison term imposed for the RICO count was reversed by a majority of this court. *State v. Willan,* 136 Ohio St.3d 222, 2013-Ohio-2405, 994 N.E.2d 400. I dissented from that judgment on grounds of the RICO statute's ambiguity and the majority's failure to follow the rule of lenity. *Id.* at ¶ 13–21 (Lanzinger, J., dissenting). Now, with the announcement of *Alleyne,* the United States Supreme Court has presented Willan another reason for reversal of his RICO conviction and sentence. His Sixth Amendment right to a jury trial has been violated. Willan cannot stand convicted of a violation of R.C. 2923.32(A)(1) in this case, because the jury never found that he had engaged in a "pattern of corrupt activity" by committing false representation in the registration of securities.

{¶ 39} *Alleyne* says that "judicial factfinding that increases the mandatory minimum sentence for a crime" violates the Sixth Amendment. *Alleyne* at 2155. *Alleyne* follows a line of Sixth Amendment cases that recognizes the jury's right and obligations as fact-finder. The jury must find all elements of a crime beyond a reasonable doubt. *Id.* at 2156. A judge cannot impose a sentence that relies on facts not reflected in the jury's verdict. *Apprendi v. New Jersey,* 530 U.S. 466, 483, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely v. Washington,* 542 U.S. 296, 304, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

{¶ 40} I do not agree that these findings were findings of law rather than findings of fact and that there is accordingly no *Alleyne* violation. The majority ignores the effect of lack of jury findings by focusing on the judge's role in sentencing (i.e., all the trial judge had to do was apply R.C. 2923.31(I)(2)(a) as written). While it is true that a judge does not engage in fact-finding by merely applying the law as written, the judge sentences only after the jury has properly concluded its role. What must be determined first is whether the jury made all of the required findings. *See Apprendi* at 477; *United States v. Gaudin,* 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The RICO statute cannot be applied until the jury determines the requisite elements beyond a reasonable doubt. *Id.* (the Fifth and Sixth Amendments require "criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt").

{¶ 41} For this reason, I disagree with the majority's conclusion that *James v. United States,* 550 U.S. 192, 214, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), is dispositive on the point whether the trial judge engaged in fact-finding. In that case, James pled guilty in federal court to one count of possessing a firearm and admitted to the three prior felony convictions listed in his federal indictment. *Id.* at 195–196. During sentencing, James objected to the application of the federal 15–year mandatory minimum term on the basis that one of his prior felony convictions—for committing attempted burglary in violation of Florida state law—did not constitute a "violent felony" under the federal statute. *Id.* at 196– 197. He cited *Apprendi* in arguing that construing attempted burglary as a violent felony violated his Sixth Amendment rights because doing so constituted judicial fact-finding. *Id.* at 213–214. The court rejected his argument, reasoning that it had engaged in statutory interpretation, rather than fact-finding, in examining the elements of attempted burglary as defined in the Florida law to determine whether it constituted a violent felony under the federal statute. *Id.* at 214.

{¶ 42} *James,* which was decided seven years prior to *Alleyne,* is inapposite to the case before us for two reasons. First, prior convictions fall under an exception to the United States Supreme Court's *Apprendi* analysis. In *Apprendi,* the court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. The analysis of the prior conviction in *James,* then, is distinct from the analysis whether the state has proved each element of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1).

{¶ 43} *James* is also inapposite because it involved a defendant who admitted to the three prior felony convictions listed in his indictment. No such admission or stipulation has occurred in this case. Whether Willan engaged in false representation in the registration of securities, whether he committed aggravated theft, and whether he committed theft from the elderly were facts to be determined by the jury, as was the question of whether any of these activities amounted to engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1).

{¶ 44} The majority states: "In this case, we know that Willan was found guilty of engaging in a pattern of corrupt activity (the RICO charge) and was found guilty of three counts of false representation." Majority opinion at ¶ 17. What the jury did not find, however, was that the three counts of false representation were the predicate "incidents of corrupt activity." It is not enough that false representation could qualify as "corrupt activity." The jury must find that it actually was the predicate corrupt activity.

{¶ 45} The verdict form asked the jury to fill in the blank in the following sentence with either "was" or "was not": "We further find that at least one of the incidents of corrupt activity _____ False Representation in the Registration of Securities, Aggravated Theft or Theft from the Elderly." The three potential predicate crimes are stated in the alternative.

{¶ 46} The point is, the jury never was asked whether the crime of false registration itself was a predicate incident of corrupt activity. The jury was not asked to make the finding inclusively for all three types of charges. In fact, it might have found that the evidence related to theft from the elderly or aggravated theft satisfied those elements. But we do not and cannot know whether the jury would have found that false registration of securities was included within the phrase "at least one of the incidents of corrupt activity" as stated in its verdict. We do not have a statement that the jury found all required elements as they would relate solely to the false-registration convictions upheld by the court of appeals.

{¶ 47} It is therefore possible that rather than the securities-registration violations, aggravated thefts constituted the incidents of corrupt activity. Or it is even more likely that the investors who testified at trial may have moved the jury to find that theft from the elderly constituted the incidents of corrupt activity. I do not agree with the majority's conclusion that it was "beyond a reasonable doubt that if the jury had been asked directly, it would have listed the false-representation counts as RICO predicates." Majority opinion at ¶ 34.

{¶ 48} The majority would also allow the trial court to supply the finding that the counts of false representation were first-degree felonies because the jury indicated on verdict forms that the value of each false-representation count was

more than $100,000. And by considering the evidence of record to be "clear-cut," the majority itself acts as fact-finder, concluding that the record supports a RICO conviction. Except that the jury did not so find in its verdict.

{¶ 49} This is not simply an analysis of the sufficiency of the evidence. With some of the possible predicate offenses having been reversed, the jury's findings with respect to the remaining predicate offense of false representation in the registration of securities needed to be examined to determine whether the RICO conviction could still stand. The actual verdict delivered is crucial—what did the jury determine with respect to the registration convictions that remained? That point was not at issue until now. If there is no RICO verdict, there is no need to discuss sufficiency of the evidence.

{¶ 50} By leaping to the discussion of evidence sufficiency, the majority bypasses *Alleyne*. And in an amazing statement, it concludes that "even if we were to construe the judicial identification of the RICO predicates as an *Apprendi/Alleyne* error, it would be a harmless one." Majority opinion at ¶ 28. In my view, an erroneous ten-year mandatory addition to a sentence is hardly "harmless."

{¶ 51} I would hold that *Alleyne* requires reversal of Willan's RICO conviction and mandatory ten-year sentence.

———

Brad L. Tammaro, Assistant Attorney General, as Special Prosecuting Attorney, and Colleen Sims, Assistant Summit County Prosecuting Attorney, for cross-appellant.

William T. Whitaker Co., L.P.A., William T. Whitaker, and Andrea L. Whitaker, for cross-appellee.