OPINION
{¶ 1} Defendant-appellant Larry Brown, Sr. appeals his conviction and sentence entered by the Richland County Court of Common Pleas on one count of aggravated murder with a firearm specification, and one count of abuse of a corpse, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 10, 2004, the Richland County Grand Jury indicted appellant on the aforementioned charges in connection with the death of Linda Singleton. The matter proceeded to a four day jury trial, commencing on April 7, 2005.
 {¶ 3} The following evidence was adduced at trial. Larry Brown, Jr., appellant's son, testified he lived with appellant and his wife, Angie Brown. Brown, Jr. recalled he met Linda Singleton one day when he and appellant were picking up Angie from work at Mansfield Assemblies, where Singleton and Angie were co-workers. Brown, Jr. explained Singleton and Angie were friends, and Singleton, her husband, and two children would socialize with appellant's family. The friendship between the two women subsequently developed into a sexual relationship. When Singleton's husband discovered this relationship, he gave his wife an ultimatum. Singleton and her daughter subsequently moved into appellant's residence.
 {¶ 4} At first, appellant did not have any problems with the relationship between Singleton and Angie. When Singleton first moved into appellant's home, she, Angie, and appellant all slept in the same bedroom. Brown, Jr. explained the three had a sexual relationship. However, the women kicked appellant out of the room. When appellant learned Angie preferred her relationship with Singleton over her marriage to him, he became angry and hostile towards Singleton.
 {¶ 5} Singleton and Angie eventually moved out of appellant's house. The two women stayed in various places, but appellant always found them. Edward Brown, appellant's oldest son, recalled Singleton and Angie lived in a tent at one time, and appellant burned it down. Edward stated appellant stalked the women, wanting to know their every move. Chris Wimer, a resident of a motel on Koogle Road where Singleton and Angie also stayed, related instances when appellant would come to the motel, throw beer bottles at the door, leave threatening notes, and make verbal threats to both Singleton and Angie. Angie borrowed money from Larry Ferguson, a friend of hers and appellant, in order to obtain a divorce. When appellant learned of this, he went to the office of Attorney Flippen, with whom Angie had consulted, and threatened the attorney if he helped her with the divorce.
 {¶ 6} In the fall of 2001, Angie moved back into appellant's house. However, she was unhappy, and planned to reunite with Linda. Angie left appellant a second time around Christmas, 2001, but returned after a short period. The last time anyone saw Singleton alive was between Christmas, 2001, and early January, 2002. Singleton spent Christmas with her family, and made plans with a friend to attend a New Year's party the following weekend. She never attended that party.
 {¶ 7} Around the time Singleton disappeared, appellant began acting strangely. Brown, Jr. remembered appellant picked him up from his mother's house one morning, and when he (Brown, Jr.) entered the car, appellant told his son he (appellant) had done something he should not have done and he would be going away for a while. Brown, Jr. testified his father was very upset at the time. Later that evening, Brown, Jr. and Edward noticed a large puddle of dark, red liquid in appellant's driveway. When his sons questioned him, appellant told them it was transmission fluid. The next day the boys noticed the puddle had been partially washed away. They came to believe the puddle was blood because it dissolved in the water.
 {¶ 8} Around this same time, appellant cleaned and sold his car. Appellant thoroughly cleaned the car, removing the trunk liner and spraying out the trunk. He also disposed of the spare tire cover, which appeared to have a spot of blood on it. The spare tire cover was later recovered in the woods near the area where Singleton's body was found. Appellant also disposed of his Hi-Point 9mm handgun which he kept in a Bible case in his car. Brown, Jr. testified appellant cut the gun into pieces and threw it out of the car window as he was driving down Rock Road.
 {¶ 9} Appellant made comments which led his sons to believe he had murdered Singleton. Appellant worked as a maintenance man for John Gottfried. While working on Gottfried's property on Stewart Road, appellant asked Brown, Jr. if he could smell anything in the area, which was in proximity to where Singleton's body was ultimately recovered. Appellant also made a comment he became winded and that was why the hole was not deep. Brown, Jr. indicated he thought his father was referring to the hole in which he buried Singleton's body. Although appellant never specifically admitted to Brown, Jr. he killed Singleton, Brown, Jr. testified his father told him he "got rid of his problem."
 {¶ 10} Brown, Jr. confided in Edward about the things his father had said. While both boys believed their father had killed Singleton and buried her body on Stewart Road, neither passed this information to the police, who were investigating Singleton's disappearance. Appellant instructed both of his sons not to talk to the police, and threatened to take them down with him if he went down.
 {¶ 11} Appellant's threats worked until Edward was arrested in September, 2004. Edward worked out a plea agreement with the authorities in exchange for his showing them the location of Singleton's body. Edward took the police to a mound of dirt on Gottfried's Stewart Road property. The police dug in the area, and unearthed Singleton's remains. An autopsy revealed she had been shot in the back of the head. A luger 9mm bullet was recovered, which was consistent with having been fired from a Hi-Point 9mm weapon. After Singleton's body was recovered, Brown, Jr. also agreed to tell the police what his father had told him about Singleton's disappearance.
 {¶ 12} After hearing all the evidence and deliberations, the jury found appellant guilty of one count of aggravated murder with a firearm specification, and one count of abuse of a corpse. Appellant appeared before the trial court for sentencing on April 18, 2005. The trial court sentenced appellant to an aggregate term of incarceration of twenty-three and a half years to life.
 {¶ 13} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 14} "I. THE COURT'S FAILURE TO RULE ON AN OBJECTION MADE DURING TRIAL BY DEFENDANT-APPELLANT PREVENTED HIM FROM RECEIVING A FAIR TRIAL.
 {¶ 15} "II. THE VERDICT WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 16} In his first assignment of error, appellant maintains the trial court's failure to rule on appellant's objection to the testimony of Michelle Davis, Edward Brown's girlfriend, deprived him of a fair trial.
 {¶ 17} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88. Further, a reviewing court shall not disturb evidentiary decisions in the absence of an abuse of discretion resulting in material prejudice. Id. The Ohio Supreme Court has repeatedly held the term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., State v.Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 18} Evid. R. 404 governs the admission of "bad acts" evidence:
 {¶ 19} "(B) Other crimes, wrongs or acts
 {¶ 20} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 21} At trial, Davis testified appellant made sexual comments to her. Appellant's trial counsel objected. During a side bar, trial counsel argued the testimony was inadmissible under Evid. R. 404 (B). The trial court agreed the testimony was prejudicial and inquired of the State as to the probative value thereof. The State argued its position, but ultimately agreed not to ask any additional questions on the subject. Upon conclusion of the side bar, the trial court instructed the State to move onto the next subject. The trial court never noted its ruling on the objection to the jury nor provided the jury with limiting or curative instructions. Although we find the trial court erred in its failure to rule on the objection, given the overwhelming evidence of appellant's guilt, we find such error did not prejudice appellant.
 {¶ 22} Appellant's first assignment of error is overruled.
 II {¶ 23} In his second assignment of error, appellant raises a manifest weight of the evidence claim.
 {¶ 24} On review for manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 25} Appellant asserts the evidence presented by the State could be labeled, at best, suspect. Brief of Appellant at 15. Appellant submits by concluding he murdered Singleton based upon the State's evidence, the jury took a leap beyond reason. Appellant points to the testimony of his son, Larry Brown, Jr., who testified his father told him he had done something stupid, and had asked his son if he smelled anything when they were at the Stewart Road Property. Appellant also refers to the testimony of Brown, Jr. and Edward regarding a puddle in appellant's driveway which the sons believed to be blood despite appellant's statement the liquid was transmission fluid.
 {¶ 26} Witness after witness testified appellant had a motive to kill Singleton because she was romantically involved with his wife. The testimony also indicated appellant was initially not bothered by the relationship of the two women because he was also sexually involved with them. However, once Singleton and Angie kicked appellant out of the bedroom, appellant's attitude toward Singleton became threatening and hostile.
 {¶ 27} The State presented numerous witnesses who observed appellant threatening Singleton and Angie during the period after the women moved out of appellant's home. Family friend, Larry Ferguson, testified Angie called him from appellant's residence to come and speak with appellant. When Ferguson arrived, appellant was begging Angie to stay, but she refused to do so. Ferguson told appellant he was going to take Angie home, which caused appellant to jump up, run into the kitchen, and break a chair over the table. Ferguson described the rage in appellant's face. Attorney Flippen, the attorney Angie hired to file her divorce, testified appellant appeared in his office and proceeded to curse him for representing his wife. Appellant refused to leave the office until Attorney Flippin threatened to call the police.
 {¶ 28} Based upon the evidence set forth in the Statement of the Case and Facts, supra, and the entire record in this matter, we find appellant's conviction was not against the manifest weight of the evidence.
 {¶ 29} Appellant's second assignment of error is overruled.
 {¶ 30} The judgment of the Richland County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Farmer, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.