[Cite as *State v. Russell*, 2018-Ohio-4524.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-59 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-432 |
| | : | |
| JEVON C. RUSSELL, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of November, 2018.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

CHRISTOPHER B. EPLEY, Atty. Reg. No. 0070981, 10 West Second Street, Suite 2400, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Jevon Cedric Russell, Jr., appeals from his convictions for one count of aggravated burglary, a first degree felony in violation of R.C. 2911.11(A)(2), and one count of having weapons while under disability, a third degree felony in violation of R.C. 2923.13(A)(2).   Raising five assignments of error, Russell argues that his convictions should be reversed because the trial court's instruction to the jury on the charge of aggravated burglary was incomplete; because the trial court abused its discretion by overruling his motion for a mistrial; because the trial court improperly ruled on objections without apprising the jury; because the State failed to present sufficient evidence to prove his guilt with respect to each of the elements of aggravated burglary; and because the verdicts were against the manifest weight of the evidence.

{¶ 2} As Russell argues, the trial court's instruction did not accurately mirror the text of R.C. 2911.11(A)(2), but we find on the record of this case that the outcome of the trial would not otherwise have been different.   We find further that the trial court did not abuse its discretion by overruling Russell's motion for a mistrial; that the court's failure to inform the jury of its rulings on objections did not affect the outcome of the trial; that the State presented sufficient evidence to prove the elements of aggravated burglary; and that the verdicts were not against the manifest weight of the evidence.   Therefore, Russell's convictions are affirmed.

## I. Facts and Procedural History

{¶ 3} On the evening of April 10, 2017, Samantha Williamson heard sounds coming from the front door to her apartment indicating that somebody outside was

attempting to force the door open.[1]  Trial Tr. 42:5-42:7 and 43:23-44:17.  She opened the door herself, and Russell and another man, Brandon Sparks, entered without her permission.[2]  *Id.* at 44:13-45:21.  Russell was carrying two firearms.[3]  *See id.* at 46:10-46:14.

{¶ 4} Once inside, Sparks asked Williamson where her boyfriend was.[4]  *Id.* at 45:22-46:9.  Williamson said only that her boyfriend was not there at the time, apparently prompting Russell and Sparks to try "to walk into one of the spare bedrooms" to verify Williamson's answer.  *See id.*  They were, however, unable to open the door to the bedroom, which Williamson told them was broken, so they grew frustrated and left.[5]  *See id.*  As the two men departed, Russell turned to Williamson and advised her to inform her boyfriend "that they had a bullet for his head."  *Id.*  They also helped themselves to several items of her boyfriend's personal property, including his wallet.[6]  *See id.* at 47:7-

---

[1] In his brief, Russell describes the sounds Williamson heard as "a knock at the door." Appellant's Br. 5.  He mistakenly refers to Williamson as "Samantha Williams" or "Ms. Williams" throughout much of his argument.  *Id.* at 5-8, 10 and 17.

[2] Sparks testified that he never entered Williamson's apartment but remained outside near the entrance.  Trial Tr. 190:6-192:15.

[3] According to Sparks, Russell had a single firearm, not two.  Trial Tr. 186:1-187:5, 188:18-189:5 and 191:10-192:19.

[4] Sparks testified that Russell made the inquiry.  Trial Tr. 191:10-192:2.

[5] Williamson might have dissuaded Russell and Sparks from forcing their way into the bedroom by telling them that her children were within, rather than by telling them that the door (or the doorknob) was broken.  *See* Trial Tr. 377:1-377:19.

[6] The other items were two fishing or hunting knives.  *See* Trial Tr. 47:7-47:11 and 127:14-127:16.  Williamson testified that Sparks and Russell each took something, though Sparks denied that he took anything himself and testified that Russell took only the two knives.  *See id.* at 47:7-47:25 and 193:5-193:10.

47:18, 127:7-127:16 and 193:5-193:10. The encounter lasted somewhat less than three minutes. *Id.* at 50:4-50:12.

{¶ 5} Shortly afterward, Williamson contacted the Fairborn Police Department, and officers responded to her residence. *See id.* at 48:1-48:8 and 50:13-50:18. Williamson identified Russell and Sparks as the intruders in her spoken account of what had happened, as well as in a written statement.[7] *See id.* at 57:20-61:18, 377:1-378:16, 383:5-383:24, 394:22-396:11 and 525:2-527:25. Williamson's boyfriend—who was, in fact, hidden in the apartment during Williamson's encounter with Russell and Sparks— also provided spoken and written statements, as did one of Williamson's neighbors. *Id.* at 42:18-42:20, 122:11-125:13, 157:9-161:11, 333:21-336:18, 338:4-338:10 and 348:1-348:12. Before Russell and Sparks entered Williamson's apartment, they had asked the neighbor whether he knew the whereabouts of Williamson's boyfriend. *See id.* at 160:5-160:19.

{¶ 6} Officers arrested Sparks later that night at his home, not far from where Williamson lived. *Id.* at 246:4-249:4. Sparks, who later entered into a plea agreement with the State, cooperated with the investigation, giving officers information that led to Russell's arrest and to the recovery of two loaded handguns hidden near a fence separating Williamson's apartment complex from adjacent commercial lots. *See id.* at

---

[7] Williamson seems to have met Sparks in advance of the incident on April 10, 2017. *See* Trial Tr. 45:1-45:9 and 60:11-62:9. An officer testified that Williamson initially identified Russell as "Cedric Russell," apparently because she knew Russell by his middle name, instead of his first name. *See id.* at 61:8-62:13 and 378:1-378:16. In her testimony at trial, Williamson acknowledged that she had heard her boyfriend refer to Russell as "Ced," but she otherwise repudiated the statements attributed to her by the officer. *Id.* at 57:20-60:24 and 62:4-62:13.

209:5-209:22, 253:1-254:8, 259:3-259:9, 262:6-262:20, 273:7-274:22 and 280:13-281:8. After they recovered the handguns, officers located Russell at a nearby residence and placed him under arrest. *Id.* at 262:6-262:20, 280:13-281:5. Inside the residence, officers discovered an Ohio driver's license belonging to Williamson's boyfriend, along with documents bearing Russell's name. *Id.* at 127:17-127:22, 295:1-296:1 and 297:11-297:20.

{¶ 7} Williamson identified Russell again in a photographic line-up during an interview at the offices of the Fairborn Police Department on April 14, 2017. *See id.* at 50:13-55:9 and 57:20-60:4. Yet, on April 17, 2017, Williamson submitted a notarized affidavit to a detective in which she averred that she knew Russell personally and denied that she had seen him with Sparks in her apartment. *Id.* at 64:1-65:13. On the same date, Williamson's neighbor viewed photographic line-ups and identified Russell and Sparks as the men who had asked him about Williamson's boyfriend. *See id.* at 161:14-169:13.

{¶ 8} A Greene County grand jury issued an indictment against Russell on August 11, 2017, charging him as follows: Count 1, aggravated burglary pursuant to R.C. 2911.11(A)(2); Count 2, burglary pursuant to R.C. 2911.12(A)(1); and Count 3, having weapons while under disability pursuant to R.C. 2923.13(A)(2). Counts 1 and 2 were each accompanied by a firearm specification under R.C. 2941.145 and a repeat-offender specification under R.C. 2941.149. Count 3 was accompanied by two forfeiture specifications directed to the handguns recovered by officers from the grounds of Williamson's apartment complex.

{¶ 9} On August 28, 2017, Russell's case proceeded to a trial by jury on Counts 1

and 2. At his request, the trial court severed Count 3, which was subsequently tried to the bench. Russell's jury trial concluded on August 31, 2017, around which time the State moved to dismiss Count 2 and the specifications attached to it.[8] The trial court sustained the State's motion, and the jury found Russell guilty of aggravated burglary as charged in Count 1, including a separate finding that Russell had had a firearm on or about his person during the commission of the offense. On September 21, 2017, the trial court found that Russell was a repeat violent offender pursuant to R.C. 2941.149, and on September 28, 2017, the court found Russell guilty as charged on Count 3.

{¶ 10} Russell appeared for sentencing on October 25, 2017. The trial court imposed a sentence of 11 years' mandatory imprisonment on Count 1; a mandatory term of three years on the attached firearm specification, to be served consecutively; a mandatory term of two years on the attached repeat-offender specification, to be served consecutively; a sentence enhancement of one year pursuant to R.C. 2929.141, to be served consecutively;[9] and a sentence of three years on Count 3, also to be served consecutively. In total, the trial court sentenced Russell to 20 years, of which 16 were mandatory. On November 3, 2017, Russell timely filed his notice of appeal to this court.

## II. Analysis

---

[8] In an entry filed on August 31, 2017, memorializing its ruling on the State's motion, the trial court indicated that the State had moved for dismissal of Count 2 "at the conclusion of its case in chief." The transcript, however, is inconsistent with this assertion; the motion seems to have been made off the record and then incorporated by reference. *See* Trial Tr. 637:24-638:11.

[9] The trial court imposed the one-year sentence enhancement pursuant to R.C. 2929.141 because Russell was serving a period of postrelease control at the time he committed the offense of aggravated burglary.

{¶ 11} For his first assignment of error, Russell argues that:

THE VERDICT SHOULD BE REVERSED BECAUSE THE JURY WAS NOT GIVEN A COMPLETE JURY INSTRUCTION FOR AGGRAVATED BURGLARY[.]

{¶ 12} Russell faults the trial court for failing to instruct the jury that it could not find him guilty of aggravated burglary unless it determined, in addition to other elements, that a person—excluding himself and any accomplice of his—was present when he and Sparks entered Williamson's apartment without permission. *See* Appellant's Br. 10. On this basis, Russell maintains that his conviction for aggravated burglary should be reversed. *Id.* He tacitly acknowledges that his trial counsel did not object to the omission. *See id.* at 9-10.

{¶ 13} Apart from "plain error," an appellate court " ' "will not consider any error * * * not call[ed] to the trial court's attention at a time when [the] error could have been avoided or corrected." ' " (Citation omitted.) *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15-16, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Russell has thus waived all but plain error because he did not object to the jury instructions at trial. *State v. Rhines*, 2d Dist. Montgomery No. 24417, 2012-Ohio-3393, ¶ 9, citing *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996); Trial Tr. 712:1-712:7. By the plain-error standard, reversal is warranted only if "the outcome of the trial would clearly have been different" but for the alleged error. *Waddell* at 166.

{¶ 14} Russell was charged in Count 1 with aggravated burglary under R.C.

2911.11(A)(2), according to which:

> No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, <u>when another person other than an accomplice of the offender is present</u>, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon * * * on or about [his] person or under [his] control.

(Emphasis added.) Here, the trial court delivered the following instruction to the jury:

> Before you can find the Defendant guilty, you must first find beyond a reasonable doubt that on or about the 10th day of April, 2017, and in Greene County, Ohio, the Defendant did, by force, or stealth, or deception, trespass into an occupied structure located [in Fairborn] with the purpose to commit the offense of theft when the offender [sic] had a deadly weapon, to wit a firearm, on or about his person or under his control.

Trial Tr. 698:15-699:3. The court defined the term "occupied structure" as "any house or building which at the time is occupied as the permanent or temporary habitation of any person, in which at the time a person is present or likely to be present." *Id.* at 700:24-701:5; *see also* R.C. 2909.01(C)(4).

{¶ 15} Russell contends that the trial court's instruction did not accurately define aggravated burglary in the absence of the element requiring the presence of a person other than an accomplice of the offender during the commission of the offense. Appellant's Br. 10. He characterizes this inaccuracy as reversible error because the instruction, as delivered, would have allowed the jury to find him guilty of aggravated burglary even if he and Sparks had trespassed into Williamson's apartment and were, at

that time, the only two persons present. *See id.*

{¶ 16} Although Russell's argument has merit inasmuch as the trial court did omit an element of the offense, we find that the outcome of the trial would not have been different had the jury instructions precisely tracked the language of R.C. 2911.11(A)(2). The jury heard testimony from two witnesses, Williamson herself and her boyfriend, who were present in Williamson's apartment when Russell and Sparks intruded.[10]   Sparks, for that matter, testified that he witnessed Russell enter the apartment in Williamson's presence. *See* Trial Tr. 191:10-191:25.   Moreover, in making his defense, Russell took the position that Williamson had truthfully identified Sparks as one of two men who trespassed into her apartment; though Williamson also identified Russell as one of the two men, he attributed this aspect of her testimony to "external pressure" and called Sparks "a liar." *See, e.g., id.* at 36:5-36:19, 662:21-663:10, 664:21-666:5 and 671:3-671:17.

{¶ 17} Neither the State nor Russell ever questioned whether Williamson was present in her apartment when the trespass occurred, and Russell himself expressly presupposed that she was.   The absence of the omitted element, then, had no discernable impact on the outcome of the trial.   Russell's first assignment of error is overruled.

{¶ 18} For his second assignment of error, Russell argues that:

> IT WAS REVERSIBLE ERROR TO DENY APPELLANT'S
> REQUEST FOR A MISTRIAL AFTER A POLICE OFFICER TESTIFIED

---

[10] Williamson's boyfriend testified that he heard Sparks's voice but did not see either Russell or Sparks during the incident.   Trial Tr. 124:3-124:25 and 125:18-127:9.

THAT A WITNESS WAS NOT FEELING SAFE WHILE BEING TRANSPORTED[.]

{¶ 19} Sparks aided the Fairborn Police Department in its investigation on the night of April 10, 2017. Trial Tr. 253:1-254:8, 259:3-259:9, 262:6-262:20, 273:7-274:22 and 280:13-281:8. Among other things, he accompanied officers to the residence where he had indicated Russell would be found. *Id.* at 273:7-274:25. At trial, one of the officers testified that before Russell was taken into custody, Sparks was transported away from the scene because "[h]e was not feeling safe at that time." *Id.* at 276:9-276:16. Russell objected and moved for a mistrial, but the trial court overruled his motion. *Id.* at 276:17-277:8. Instead, the court sustained the objection and cautioned the jury "to disregard the comment about Mr. Sparks not feeling safe," emphasizing that the comment was "not to be used in any way as evidence." *Id.* at 278:24-279:20. Russell contends that the court erred by overruling his motion for a mistrial because the officer's testimony "materially prejudiced" his case. Appellant's Br. 13.

{¶ 20} A mistrial should "be declared only when * * * a fair trial is no longer possible." (Citations omitted.) *See State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Whether "to grant a mistrial is a question left [to] the discretion of the trial court, and the court's decision will not be disturbed on appeal absent a finding that the decision constitutes an abuse of discretion." (Citation omitted.) *State v. Wilkins*, 183 Ohio App.3d 824, 2009-Ohio-4575, 919 N.E.2d 241, ¶ 51 (2d Dist.). A decision satisfies this standard if it evinces "an arbitrary, unreasonable [or] unconscionable attitude on the part of the court." (Citation omitted.) *Id.*

{¶ 21} Russell insists that he was materially prejudiced because the jury heard that

Sparks, "[o]ne of the [S]tate's primary witnesses, who testified * * * under a plea deal," reputedly felt unsafe at the scene of Russell's arrest. Appellant's Br. 13. Yet, Sparks himself had already testified by that point in the trial, meaning that the jury had already had a first-hand opportunity to observe his demeanor, to evaluate his account of events and to make an assessment of his credibility. The officer's statement about Sparks "not feeling safe," furthermore, was an isolated remark and seems likely to have had a negligible impact on the jury. More importantly, the trial court sustained Russell's objection to the remark and promptly gave a curative instruction, with which the jury presumably complied. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995) (noting that a "jury is presumed to follow the instructions, including curative instructions, given it by a trial judge"); *State v. Goldick*, 2d Dist. Montgomery No. 22611, 2009-Ohio-2177, ¶ 42; Trial Tr. 278:24-279:20. Therefore, we find that the trial court did not abuse its discretion by refusing to grant a mistrial. Russell's second assignment of error is overruled.

{¶ 22} For his third assignment of error, Russell argues that:

APPELLANT'S SUBSTANTIAL RIGHTS WERE AFFECTED WHEN THE TRIAL JUDGE DID NOT RULE ON OBJECTIONS ON THE RECORD[.]

{¶ 23} Russell claims that his "constitutional rights were violated" because the trial court failed to announce its rulings on objections to the jury.[11] Appellant's Br. 14-16. At

---

[11] Although the State suggests that Russell also challenges the merits of the trial court's ruling on a specific objection, Russell's third assignment of error is directed only to the propriety of the trial court's practice of resolving objections without informing the jury. *Compare* Appellant's Br. 14 and 16 *with* Appellee's Br. 16.

trial, Russell did not object to this practice, so we review for plain error.

{¶ 24} Appearances to the contrary notwithstanding, Russell acknowledges that the trial court ruled on objections for the record—he quotes seven examples in his brief. *Id.* In one of these, which Russell offers as the prime example of the "fundamental [un]fairness" of "rul[ing] upon [objections] outside the [hearing] of the jury," his trial counsel objected to a question posed to Sparks on direct examination by the State. *See id.* at 14 and 16. The court ruled on the objection after the following exchange, during which the State was addressing its plea agreement with Sparks:

> THE STATE: And you and I have met before—just to be fair to the jury and the Defendant. Is that right?
>
> SPARKS: Yes, sir.
>
> THE STATE: Can you let—just tell the ladies and gentlemen of the jury what it is that I asked you to do every time that we met with each other.
>
> SPARKS: To be honest.
>
> DEFENSE COUNSEL: Your Honor, I'm going to object.
>
> THE COURT: Approach.

Trial Tr. 211:1-211:12. A bench conference began at that point. *Id.* at 211:13.

{¶ 25} In conference, Russell's counsel explained that he had objected on the basis of "improper bolstering," and the State consented to withdraw the question. *Id.* at 212:5-212:14. With the issue thus resolved, the trial court sustained the defense's objection. *Id.* at 213:1-213:2. The parties acknowledged the court's ruling, and the conference concluded. *Id.* at 213:3-213:7. Afterward, the State resumed its examination of Sparks, but rather than formally withdrawing the previous question, it

proceeded to ask a series of questions about Sparks's connection to Russell and the circumstances of Russell's arrest. *See id.* at 213:8-217:14. Russell argues that the jury was consequently "left with the answer that [Sparks was] 'to be honest' even though that should have been stricken from the record upon the [c]ourt's ruling." Appellant's Br. 14.

**{¶ 26}** We agree generally that the trial court should have informed the jury of its rulings on objections. *See, e.g., State v. Green*, 2d Dist. Greene No. 2007 CA 2, 2009-Ohio-5529, ¶ 123-132; *State v. Brown*, 5th Dist. Richland No. 05 CA 41, 2006-Ohio-3277, ¶ 16-22. Nevertheless, given that the court did not notify the jury of its rulings on either of the parties' objections, the lack of notification affected the State and Russell alike, vitiating the prospect that Russell was unfairly prejudiced. As well, in its opening and closing instructions, the court told the jury that it "must not speculate as to why" an objection "to any question" was sustained "or what the answer to such question" would have been; this is a standard instruction that the jury is presumed to have followed. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995) (noting that juries are presumed to follow instructions); *compare with State v. Thomason*, 2018-Ohio-1228, ___ N.E.3d ___, ¶ 16-19 (2d Dist.) (holding that the defendant-appellant was not prejudiced by her trial counsel's failure to request an immediate curative instruction after the trial court sustained counsel's objection to hearsay testimony, because the "trial court instructed the jury before and after the presentation of evidence" not to speculate as to why an objection had been sustained). Russell, then, cannot have been prejudiced by the trial court's failure to inform the jury regarding matters not subject to the jury's consideration.

**{¶ 27}** With respect to Sparks's testimony that the State asked him "[t]o be honest," we note that Russell's trial counsel did not request a curative instruction. Trial Tr. 213:1-

213:7. Even if Russell had preserved this issue for review on the merits, however, the presumption that the jury followed the trial court's opening and closing instructions essentially forecloses the possibility that the lack of a curative instruction resulted in prejudice. *See Thomason* at ¶ 16-19.

{¶ 28} We find that the outcome of the trial would not clearly have been different had the trial court notified the jury of its rulings on the parties' objections. Russell's third assignment of error is overruled.

{¶ 29} For his fourth assignment of error, Russell argues that:

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF AGGRAVATED BURGLARY[.]

{¶ 30} Russell contends that his conviction for aggravated burglary should be reversed because the State did not present sufficient evidence to prove his guilt. In support of this contention, Russell presents a series of citations to the record that, by implication, appear to have been intended to cast doubt on the credibility of Sparks's testimony. *See* Appellant's Br. 17.

{¶ 31} Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the jury['s] verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.,* quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492

(1991), paragraph two of the syllabus.

{¶ 32} Russell's argument regarding the sufficiency of the evidence lacks merit. He not only fails to specify which of the elements of aggravated burglary was allegedly not proven, but more problematically, he bases his argument entirely on the question of Sparks's credibility—a matter within the jury's prerogative. *See, e.g., State v. Williams*, 2d Dist. Miami No. 2004 CA 6, 2004-Ohio-6218, ¶ 22.

{¶ 33} At trial, Williamson and Sparks testified that Russell forcibly trespassed into Williamson's apartment while in possession of a firearm, and Williamson's neighbor testified that Russell had asked him about Williamson's boyfriend moments before the incident. Trial Tr. 43:23-45:21, 46:10-46:14, 47:7-47:18, 57:20-61:18, 122:11-125:13, 127:7-127:16, 157:9-161:11, 186:1-187:5, 188:18-189:5, 190:6-192:19 and 193:5-193:10. The testimony further established that Williamson and her boyfriend were present in the apartment at that time, and that Russell committed a theft offense as he left the premises. *Id.* at 47:7-47:18, 127:7-127:16, 191:10-191:25 and 193:5-193:10; *see also* R.C. 2913.01(K) (defining "theft offense"). Viewed in a light favoring the prosecution, any rational trier of fact could have found that this evidence proved Russell's guilt beyond a reasonable doubt. *See* R.C. 2911.11(A)(2). Russell's fourth assignment of error is overruled.

{¶ 34} For his fifth assignment of error, Russell argues that:

THE VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 35} Finally, Russell maintains that because Williamson and Sparks gave inconsistent testimony, his convictions for aggravated burglary and having weapons while

under disability were against the manifest weight of the evidence. Appellant's Br. 18-19. He contests his conviction on the latter charge, which was tried to the bench, because "no * * * evidence or testimony was provided to the [j]udge" that had not already been introduced at his jury trial on the charge of aggravated burglary. *Id.* at 19.

{¶ 36} In a challenge based on the weight of the evidence, an "appellate court acts as a 'thirteenth juror.' " *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 49 (2d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against [a] conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

{¶ 37} Regarding Williamson's testimony at trial, Russell observes that Williamson did not identify him as one of the two men who trespassed into her apartment. Despite identifying Russell on the night of the incident, and again in a photographic line-up on April 14, 2017, Williamson also submitted an affidavit to a detective on April 17, 2017, in which she averred that she knew Russell personally and denied that she had seen him in her apartment. *Id.* at 50:13-55:9, 57:20-60:4 and 64:1-65:13. Even so, Williamson also testified that she was paid $250.00 by a third party in connection with her affidavit of April

17, 2017, and acknowledged that she had told the detective that she would be concerned for her safety if called upon to testify at Russell's trial. *Id.* at 74:23-77:4.

{¶ 38} Regarding Sparks's testimony, Russell notes that Sparks denied entering Williamson's apartment, but instead, testified that only Russell himself crossed the threshold. *See* Trial Tr. 190:6-192:15. He contends that the "sharp contrast" between Williamson's account of events, and that of Sparks, undermines the reliability of his convictions. Appellant's Br. 19.

{¶ 39} We recognize that legitimate questions may be raised about the credibility of the testimony offered by these two witnesses. Nonetheless, the jury's resolution of the conflicts in the evidence was not unreasonable. Whatever motive Sparks had for denying that he actually entered Williamson's apartment, Williamson's equivocation on the stand with respect to Russell's involvement in the incident is readily explained by her concern for her safety, and the fact that she admitted to being paid in connection with her affidavit of April 17, 2017, renders the affidavit highly suspect. The information that Sparks provided to the officers of the Fairborn Police Department, furthermore, proved to be accurate.

{¶ 40} Considering the record as a whole, including circumstantial evidence such as the testimony of Williamson's neighbor, this does not appear to be an exceptional case in which the evidence weighs heavily against Russell's convictions. We hold that the jury did not clearly lose its way in finding Russell guilty of aggravated burglary, and consequently, that the trial court did not clearly lose its way in relying on the evidence adduced during Russell's jury trial in finding Russell guilty of having weapons while under disability. Russell's fifth assignment of error is overruled.

### III. Conclusion

**{¶ 41}** The trial court's instruction to the jury on the charge of aggravated burglary did not precisely mirror the language of R.C. 2911.11(A)(2), but on the record before us, we find that the outcome of Russell's trial would not otherwise have been different. We find further that the trial court did not abuse its discretion by overruling Russell's motion for acquittal; that the outcome of the trial was not affected by the trial court's practice of ruling on objections without apprising the jury; that the State presented sufficient evidence to prove the elements of aggravated burglary; and that the verdicts entered against Russell were not against the manifest weight of the evidence. Therefore, Russell's convictions are affirmed.

. . . . . . . . . . . .

HALL, J., concurring:

**{¶ 42}** I agree with the analysis and conclusions written for the majority. With respect to the issue about a potentially incomplete jury instruction on aggravated burglary, there was no objection and therefore a plain error analysis applies. In this case, no construction of the admitted evidence or of the State's presentation would have resulted in the outcome of the trial being different.

**{¶ 43}** The court's instruction on aggravated burglary did not contain the words "when another person other than an accomplice of the offender is present." Breaking down that phrase there are two parts: 1) another person is present and 2) that an accomplice does not count as a person present.

**{¶ 44}** There should be no doubt that the jury was instructed, and they necessarily found, that another person was present. The statutory definition of an occupied structure

was given to the jury. "Occupied Structure" means any house or building which at the time is occupied as the permanent or temporary habitation of any person, in which at the time a person is present or likely to be present." Trial Tr. 701. Careful review of the transcript reveals there was absolutely no evidence about when, how or whether someone was "likely to be present." Without any "likely to be present" evidence, therefore, the jury had to conclude that a person *was in fact* present at the time of the offense.

{¶ 45} That leaves only the question of whether, theoretically, the jury could have considered whether the other person present when Russell entered the residence was Sparks, his accomplice. First, the indictment (Doc. #1) included the "when another person other than an accomplice of the offender is present" language, so Russell and his counsel were on notice that Sparks was not claimed to be the other person present. Second, there was never any factual dispute that Samantha Williamson was present when the men entered. That was her undisputed testimony. Third, the State, in closing argument, told the jury, "The State has to prove that Jevon Russell, on or about April 10, 2017, in Greene County, Ohio, did by force trespass into an occupied structure when another person, other than an accomplice of the offender, is present with purpose to commit a theft offense, * * *." Trial Tr. 648. Fourth, the State argued further that, "There's no doubt that somebody other than an accomplice of the offender was present. And the accomplice in this case was Brandon Sparks. We've heard from him. There were actually two other people who were inside that apartment, one of them being Samantha Williamson and one of them being [her boyfriend]." Trial Tr. 649-650. Consequently the State not only directed the jury to the correct statutory language but also pointed to the two persons who were present

and who were not an accomplice. In my opinion, on this record, it is certain that the jury concluded that the other-person-present was either Williamson or her boyfriend or both, and they excluded Sparks from that equation. The result would be no different, and there is no plain error.

{¶ 46} Finally, there is an eerily similar case from the First District Court of Appeals. In *State v. Crawford*, 1st Dist. Hamilton No. C-030540, 2004-Ohio-3895, the charge was aggravated burglary. The court did not instruct on the "when another person other than an accomplice of the offender is present" language. However, as was done here, the court did include the "presence of another" language in the definition of "occupied structure." The *Crawford* court observed that there was no objection to the jury instructions and therefore a plain error analysis was appropriate. With the identical legal issue that is before us, the First District concluded there was no plain error.

{¶ 47} I agree with Judge Tucker's analysis herein and with the First District's conclusion in Crawford, and therefore I concur.

DONOVAN, J., concurring in part and dissenting in part:

{¶ 48} I disagree with the majority's resolution of the first, third and fourth assignments of error. The Ohio Constitution states: "The right of trial by jury shall be inviolate." Ohio Constitution, Article I, Section 5. If justice is to be achieved and the jury recognized for its institutional and historical significance, it is paramount that the court's instructions be clear, accurate and complete, particularly with respect to the essential elements of the alleged crime that must be proved by the government beyond a reasonable doubt. It is within the peculiar and exclusive province of the jury to determine any question of fact. R.C. 2945.11.

{¶ 49} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), relied upon by the State, Justice Scalia wrote that when we make pronouncements about the right to trial by jury, we are "operating upon the spinal column of American democracy." *Id.* at 30 (Scalia, J., dissenting). Although we should not overlook the majority analysis in *Neder* (albeit a harmless error scenario), we are not bound by it when interpreting the Ohio Constitution. States are free to interpret their constitutions as providing greater protection to individual rights than the U.S. Constitution. The Ohio Constitution "is a document of independent force," and the U.S Constitution "provides a floor below which state court decisions may not fall." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 42, 616 N.E.2d 163 (1993).

{¶ 50} Indeed, the U.S. Constitution does not use the word "inviolate," but merely provides the right to an impartial jury in all crimes except as may result in impeachment. U.S. Constitution, Article III, Section 2, cl. 3; Sixth Amendment to the U.S. Constitution. Black's Law Dictionary defines "inviolate" as "free from violation, not broken, infringed or impaired." *Black's Law Dictionary* 955 (10th Ed. 2014). Webster's defines "inviolate" as "free from change or blemish; PURE, UNBROKEN, * * *, free from assault or trespass: UNTOUCHED, INTACT." (Emphasis added.) *Webster's Third New International Dictionary* 1190 (1993). The term "inviolate" denotes deserving of the highest level of protection. It is a function that neither the trial court nor this court should invade. I cannot think of anything else in our Constitution that is described as "inviolate."

{¶ 51} It is well settled that:

* * * [T]he right to a jury trial does not involve merely a question of procedure.

The right to a jury trial derives from [the] Magna Charta. It is reasserted

both in the Constitution of the United States and in the Constitution of the State of Ohio. For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege.

*Cleveland Ry. Co. v. Halliday*, 127 Ohio St. 278, 284, 188 N.E. 1 (1933), citing *Martin v. Windsor Hotel Co.*, 70 N.Y. 101 (1877).

{¶ 52} The majority opinion essentially permits the trial court to direct a verdict on an essential element of the offense. We are compounding this error, to borrow further language from Justice Scalia in *Neder*:

The Court's decision today is the only instance I know of (or could conceive of) in which the remedy for a constitutional violation by a trial judge (making the determination of criminal guilt reserved for a jury) is a repetition of the same constitutional violation by the appellate court (making the determination of criminal guilt reserved to the jury).

*Neder* at 1845 (Scalia, J., dissenting).

{¶ 53} No matter what the evidence against Russell was, he had the right to a jury determination inviolate.

{¶ 54} I recognize the fact that there is case law in Ohio which addresses the failure of the trial court to instruct on all the essential elements of the offense. *See State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), and *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45. The latter case, *Wamsley*, endorsed the plain error analysis applied in *Adams*. *Wamsley* at ¶ 17. The *Adams* court held that the failure to instruct on each element of an offense is not necessarily reversible as plain

error. *Adams* at paragraph two of the syllabus. However, neither *Adams* nor *Wamsley* addressed the distinct language of the Ohio Constitution requiring the right to a jury determination as "inviolate."

{¶ 55} Furthermore, *Neder*, *Adams*, and *Wamsley* were all decided prior to a string of cases, at both the federal and state levels, which hold that it is the jury's province to determine whether the prosecution has proven each element of an offense beyond a reasonable doubt. This includes any fact other than the existence of a prior conviction. These cases also reject judicial fact-finding when increased punishment is predicated upon a particular fact. *See*, *e.g.*, *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 621 (2005); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *State v. Willan*, 144 Ohio St.3d 94, 2015-Ohio-1475, 41 N.E.3d 366.

{¶ 56} At least two state supreme courts have held that their state constitutions provide a broader jury trial guarantee than *Neder* recognized in the U.S. Constitution. *See*, *e.g.*, *Harrell v. State*, 134 So.3d 266, 270-75 (Miss.2014) (holding under the Mississippi Constitution "that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element"); *State v. Kousounadis*, 159 N.H. 413, 986 A.2d 603, 616 (2009) ("*Neder*, however, has been widely criticized, and we decline to follow it with regard to our interpretation of the New Hampshire Constitution."). In addition, at least one state court has suggested that *Neder's* application of harmless error analysis to cases where the jury did not make a finding of guilt beyond a reasonable doubt on all elements will be "short-lived" given the Supreme Court's Sixth Amendment jurisprudence, starting with *Apprendi*

emphasizing the need for jury findings. *See Freeze v. State*, 827 N.E.2d 600, 605 (Ind.Ct.App.2005). I would also note that more than half of the state constitutions use the term "inviolate" with respect to the right to a jury trial.

{¶ 57} Here, absent a jury's finding of fact that someone other than Russell's accomplice was present, Russell's conviction for aggravated burglary under R.C. 2929.11(A) was unconstitutional. The only thing the jury rendered factual findings on was burglary, R.C. 2911.12(A)(3), which did not require this additional, omitted element. The Supreme Court of the United States has repeated its holding that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – *no matter how the State labels it* – must be found by a jury beyond a reasonable doubt." (Emphasis added.) *Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556, citing *Apprendi* at 482-483. As Justice Scalia noted in his *Ring* concurrence, "I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives – whether the statute calls them elements of the offense, sentencing factors, or Mary Jane – must be found by the jury beyond a reasonable doubt." *Id.* at 610 (Scalia, J., concurring). Accordingly, I would reverse the conviction for aggravated burglary.


Copies sent to:

Nathaniel R. Luken
Christopher B. Epley
Hon. Michael A. Buckwalter